IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VS.                                                    CRIMINAL NO. 1:24cr11-TBM-BWR

ELIJAH PORTER

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

COMES NOW the defendant, Elijah Porter, who respectfully moves this Court to enter an order suppressing all evidence obtained from the illegal search that occurred on or about January 25, 2024.  Mr. Porter specifically seeks to exclude the firearm found underneath the driver's seat during the illegal warrantless search of the vehicle.  An evidentiary hearing is requested on this motion.

### UNDERLYING FACTS AND CIRCUMSTANCES

At 1:05 p.m. on January 25, 2024, Mr. Porter was driving westbound on U.S. Highway 90 in Gautier, Mississippi in a 2017 Ford Fusion.  Gautier Police Officer Charles Hoggard received an alert from the license plate reader that the vehicle was associated with a wanted person.  Officer Hoggard located the vehicle turning north onto Gautier-Vancleave Road and conducted a traffic stop to investigate the warrant.  The entire stop is depicted on Hoggard's body camera.

Mr. Porter cooperated with Hoggard and was detained while Hoggard confirmed the validity of the warrant.  The officer informed Mr. Porter that he was being detained until they could get further information related to the warrant.  He asked Mr. Porter to step out of the vehicle and then removed all the items from Mr. Porter's pockets and placed them in the driver's seat of Mr. Porter's car.  Mr. Porter was placed in the backseat of the patrol car during the warrant check. Hoggard removed Mr. Porter's ear bud and placed it in the front seat of Porter's vehicle.  He also

reached into the car to put the driver's side window up.  Hoggard is seen going back to Mr. Porter's car and removing the keys from the ignition and placing them with Mr. Porter's other property in the driver's seat.

Hoggard ultimately went in and around the driver's seat at least three times after he detained Mr. Porter.  His body camera reveals his view of the driver's side seat with the items he removed from Mr. Porter's pockets on the seat, and it also reveals the absence of any items visible under or around the base of the driver's seat:



Body Camera, at 4:42.

While waiting to hear back on the warrant, Hoggard began searching Porter's car.  He opened the center console and rummaged around.



Body Camera, at 5:32 (showing Hoggard's arm in the center console).



Body Camera, at 5:34 (indicating that the center console is now open).

3

Hoggard then continued his search and reached underneath the seat and found the subject firearm.



Body Camera, at 5:48 (illustrating Hoggard reaching underneath the seat)

After finding the firearm, Hoggard called another officer on his cell phone and claimed that he found it "basically in plain view," with "the barrel sticking out from under the seat." Body Cam, at 8:18. Hoggard walked back to his patrol car and told Mr. Porter that he found the firearm in plain view and that it was sticking out from under his seat. Body Cam, at 9:07. Hoggard then called and asked dispatch to send an officer with an inventory sheet. Several minutes after locating the firearm, Hoggard radioed dispatch and asked if the warrant had been confirmed. *Id.* at 10:47. Dispatch advised that they were still waiting on confirmation. *Id.* at 10:54. The warrant was ultimately confirmed and the vehicle was later impounded.

On February 21, 2024, Mr. Porter was charged by indictment with one count of possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). ECF 3.

4

**LAW & ARGUMENT**

**1.    The search and seizure violated the Fourth Amendment.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and a warrantless search or seizure is per se unreasonable unless one of the recognized exceptions applies, *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020).  The Government bears the burden of justifying a warrantless search.  *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir. 2016); *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017).

An investigatory stop or temporary detention must be supported by a reasonable suspicion "that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).  "Reasonable suspicion must exist *before* the initiation of an investigatory detention."  *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020).  Reasonable suspicion to support an investigatory stop exists if the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), and requires "specific and articulable facts" that the person stopped "has committed, is committing, or is about to commit a crime," *Monsivais*, 848 F.3d at 357.  Under the fruit-of-the-poisonous-tree doctrine, evidence that is derived from an illegal search or seizure must be suppressed unless the Government can show "a break in the chain of events sufficient to refute the inference that the evidence was a product of a Fourth Amendment violation." *United States v. Martinez*, 486 F.3d 855, 864 (5th Cir. 2007) (internal quotation marks and citation omitted).

**2.    There was no reasonable suspicion to support a stop of Mr. Porter's vehicle.**

An unconfirmed hit on a license plate reader does not alone form the reasonable suspicion

necessary to support an investigatory detention. A stop must be individualized, in other words, based on "a suspicion that the particular [subject] being stopped is engaged in wrongdoing." *United States v. Cortez*, 449 U.S. 411, 418 (1981); *Prado Navarette v. California*, 572 U.S. 393, 396-97 (2014). The Government has the burden of proving "the specific and articulable facts that support the reasonableness of the suspicion" to justify a stop and cannot do so here. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

First, there was no basis to presume that Mr. Porter was driving the vehicle that was stopped. The car belonged to and was registered to Mr. Porter's brother; Mr. Porter was simply "associated" with it. Moreover, there was no allegation that the vehicle was stolen or had somehow been involved with or associated with a crime. Fundamentally, there was no reasonable suspicion to support that Mr. Porter was "potentially engaged in specific criminal activity" that would "allow officers to stop drivers whose conduct is no different from any other driver's." *Kansas v. Glover*, 589 U.S. 376, 385 (2020); *see Hill*, 752 F.3d at 1033.

Second, Mr. Porter did not commit a traffic violation justifying the stop. *See United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015) ("A traffic violation provides officers with authority for an investigative stop."). "The Fourth Amendment requires . . . an individualized suspicion that a particular citizen was engaged in a particular crime." *Id.* at n.1. In a case like this one that involves an outstanding warrant, "the information the officers relied on must satisfy a higher level of specificity than if they were responding to a report of ongoing or very recent criminal activity." *United States v. Alvarez*, 40 F.4th 339, 347 (5th Cir. 2022). Indeed, on the body camera footage, the officer repeatedly states that he was picking Mr. Porter up on a warrant out of Crystal Springs, Mississippi that he knew nothing about, and that he had been tracking a vehicle—registered to Mr. Porter's brother—that Mr. Porter was somehow "associated" with. *See Alvarez*, 40 F.4th at 352

6

("We do not blindly accept officers' reliance on information obtained through police channels; the government must substantiate the basis of the information."). Accordingly, there was no basis to stop Mr. Porter and the investigatory detention violated his Fourth Amendment right to be free from unreasonable searches and seizures.

**3.    The warrantless search of the vehicle was illegal and the plain view doctrine does not apply.**

Even assuming that the stop was legal, the firearm was not in plain view. Under the plain view doctrine, "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). Thus, the plain view doctrine justifies a seizure of evidence in plain view without a warrant only if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

For the above stated reasons, because the stop was illegal, the officer did not have a lawful right to enter Mr. Porter's vehicle. Moreover, even if the stop was valid, the officer was not able to see the firearm—which was completely hidden beneath the driver's seat—until he conducted the warrantless search and rummaged into Mr. Porter's center console and later stuck his hand underneath the seat to reach around. *See* Body Camera Stills, *supra*. This is bolstered by the body camera footage which captured several views of the of the driver's seat and floorboard demonstrating that the firearm was not in "plain view." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) ("[V]ideo recordings are given a presumption of reliability and significant evidentiary weight because 'an electronic recording will many times produce a more reliable rendition than will the unaided memory of a police agent"); *see Scott v. Harris*, 550 U.S. 372, 380-

81 (2007).

The firearm was not in plain view even when the vehicle door was open, as evidenced by the fact that the officer was in and around the driver's side of the vehicle, the driver's seat, and the floorboard multiple times. He opened the door at least three times without seeing the firearm, bending down to place Mr. Porter's personal property onto the driver's seat, rolling up the windows, and leaning into the car to remove the keys from the ignition. However, it was not until he was engaging in an illegal search of the vehicle that he located the firearm. If the firearm had been in plain view, the officer would have seen it before he looked underneath the seat.

Furthermore, "[w]hile the interior of an automobile is not subject to the same expectations of privacy that exist with respect one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class*, 475 U.S. 106, 114-15 (1986). Thus, "an officer's momentary reaching into the interior of a vehicle [does] constitute a search," *United States v. Jones*, 565 U.S. 400, 410 (2012), and the Fifth Circuit has held that an officer conducts a search when "he pierce[s] the airspace inside the vehicle," *United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1990). Therefore, since the firearm was not in plain view, it was the result of a warrantless search. There was no justification for any protective search because there was no objective reason for the officer to fear for his safety or the safety of others, *see United States v. Wallen*, 388 F.3d 161, 165 (5th Cir. 2004), especially where the officer had already frisked Mr. Porter, determining that he did not have any weapons on him, and handcuffed him and secured him in the back of the patrol car.

Moreover, even assuming that the firearm was in plain view—an argument clearly belied by the video evidence—the incriminating nature of the firearm was not "immediately apparent." "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause'

8

to believe that the item is either evidence of a crime or contraband." *Id.* at 369. "To have probable cause, it is not necessary that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be a practical, nontechnical probability that incriminating evidence is involved." *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (internal quotation marks and citations omitted).

In his report, Hoggard states as follows:

> I then detained Porter and had dispatch confirm the hit was valid. I took all property out of his pockets placed Porter in my vehicle. I then went back to the vehicle to put some of the property in his seat for the time being until the hit was confirmed. While doing that and beginning to inventory the vehicle I saw the barrel of a Glock 19x sticking out from under the driver's seat where Porter was sitting.

Hoggard claims that he saw only the barrel of a gun in plain view. With nothing more, the illegality of the firearm is not "immediately apparent" as it is not a crime to carry a firearm in Mississippi.

**4.    The firearm was not found during a lawful inventory search.**

"An inventory search is the search of properly lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). Inventory searches are an exception to the warrant requirement because they serve "caretaking purposes" and "are not designed to uncover evidence of criminal activity." *United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994). Accordingly, "an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent" with the purposes of an inventory. *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (internal quotation marks and citation omitted). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Whren*, 517 U.S. at 811 (internal quotation marks and citation

omitted).   Thus, standardized criteria must regulate the opening of containers found when conducting an inventory.  *Florida v. Wells*, 495 U.S. 1, 4 (1990).  Importantly, "[i]t is beyond serious debate that the prosecution bears the burden of establishing that any evidence submitted, which resulted from an inventory search, was the result of a search conducted in accordance with known, established police procedures."  *United States v. Hope*, 102 F.3d 114, 117 (5th Cir. 1996).

In his report, Hoggard claims that he was engaging in an inventory search at the time he found the firearm.  However, at the time he began his inventory search, he claimed that Porter was only being detained, and  he had not yet confirmed the validity of the warrant.  Thus, no decision had been made to impound or seize the vehicle, nor was there any valid basis to do so.  There was no reason to begin an inventory search of the vehicle because at that point, there was no indication that Mr. Porter had committed any crime.  Accordingly, at the time Hoggard found the firearm, he was not performing a valid inventory search such that would except the search of the vehicle from the warrant requirement.

**CONCLUSION**

Officer Hoggard went back and forth to Mr. Porter's vehicle at least three separate times, leaning in and around the driver's seat cabin.  It was not until he stuck his hand underneath the seat—beyond view—that his search revealed a firearm.  These circumstances do not support his erroneous contention that the firearm was in "plain view."  Moreover, Hoggard is also incorrect that he uncovered the firearm during a lawful inventory search.  At the time that he began the "inventory," there was no basis for impounding or seizing Mr. Porter's car—indeed, the warrant allegedly justifying the detention of Mr. Porter had not yet been returned yet.  Thus, Hoggard's "inventory" at that point was akin to a "ruse for a general rummaging in order to discover incriminating evidence" violative of the Fourth Amendment and inconsistent with the purposes of

an inventory. *Whren*, 517 U.S. at 811. Accordingly, the warrantless search of the vehicle and ultimate discovery of the firearm did not fall within any valid exceptions to the warrant requirement and violated Mr. Porter's Fourth Amendment rights. The Government cannot meet its burden of proof to show otherwise. For these reasons, this Court should grant this motion and thereafter suppress the fruits of the illegal search and seizure. *See Martinez*, 486 F.3d at 864.

Respectfully submitted this the 24th day of May, 2024.

**ELIJAH PORTER**
Defendant

By:    */s/Lauren Hillery*
Lauren Hillery (MSB #103253)
Assistant Federal Public Defender
Southern District of Mississippi
2510 14th St., Suite 902
Gulfport, MS  39501
Telephone: 228-865-1202
Facsimile: 228-867-1907
Email: lauren_hillery@fd.org
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Lauren Hillery, hereby certify that on this day I electronically filed the foregoing motion with the Clerk of the Court using ECF system which sent notification of such filing to the Assistant United States Attorney Hunter McCreight.

This the 24th day of May, 2024.

*/s/Lauren Hillery*
Assistant Federal Public Defender